UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


DEVELOPERS SURETY AND
INDEMNITY COMPANY                                                    PLAINTIFF


v.                                                      NO. 3:11-CV-00090-CRS-JDM


RENAISSANCE/VALLEY FARMS, LLC et al.                        DEFENDANTS


## MEMORANDUM OPINION

This action was initially brought to enforce an encroachment bond issued by the plaintiff, Developers Surety and Indemnity Company ("Developers"), to Renaissance/Valley Farms, LLC and its affiliated entities. The matter is now before the court on three motions for summary judgment relating to the Amended Third Party Complaint of Renaissance/Valley Farms, LLC, Donald J. Cook, and DKCD, Inc. (DN 104), and the Third Party Complaint of T&C Contracting, Inc. (DNs 53, 119, 121, 123).

### I.

This action has a complex factual and procedural history that the court has detailed below to put the pending motions in their proper context.

### A. Factual Background

In 2004, Defendant/third party plaintiff Renaissance/Valley Farms, LLC ("Renaissance/Valley") commenced construction of the Valley Farms subdivision on the north side of Valley Station Road in Louisville, Kentucky. Renaissance/Valley needed to widen Valley Station Road and construct additional lanes of traffic, including a center turning lane, to

accommodate the increased traffic that was anticipated from the new development.  Because Valley Station Road is a state-owned right-of-way under the control of the Kentucky Transportation Cabinet ("KYTC"), Renaissance/Valley applied to the KYTC for an encroachment permit that would allow it to engage in construction on the roadway.  The KYTC requires that all encroachment permit applications be accompanied by a bond or cash indemnity.  Accordingly, Renaissance/Valley entered into an indemnity agreement dated September 14, 2004 with Developers, pursuant to which Developers issued an Encroachment Permit Bond to Renaissance/Valley on January 7, 2005.  The bond bound Developers as a surety for the KYTC's benefit for work performed on the Valley Station Road construction project.

Renaissance/Valley contracted with DKCD, Inc.,[1] a related company with similar ownership, to serve as the construction manager of the project.  DKCD, Inc., in turn, retained Heritage Engineering, LLC ("Heritage") to prepare engineering plans for the roadway, which were submitted to the KYTC for approval.  After receiving the necessary approval, the KYTC issued an encroachment permit to Renaissance/Valley in February 2005 for site grading, storm piping, constructing detention basins, and adding turn lanes on Valley Station Road.

In August 2005, DKCD, Inc. contracted with T&C Contracting, Inc. ("T&C") to construct the roadway in accordance with the plans that Heritage had designed.  However, sometime between the February 2005 issuance of the encroachment permit and the time that T&C commenced construction in October 2005, the Renaissance Parties instructed Heritage to revise the plans to include, among other things, "spot elevations" for the roadway.  Apparently, these revised plans were not submitted to the KYTC for approval, but both T&C and Heritage

---

[1] DKCD, Inc. operates under the assumed name of Renaissance Development.  Third party plaintiff Donald J. Cook is a principal of both Renaissance/Valley and DKCD, Inc.  He serves as manager of Renaissance/Valley and president of DKCD, Inc.

claim that Renaissance/Valley gave the revised plans to T&C with instructions to construct the roadway in accordance with those plans.

After construction was completed, Robert Rogers, a KYTC employee, inspected the roadway and issued an Encroachment Inspection Notice to Renaissance/Valley dated July 24, 2008. The Inspection Notice served as a notice to Renaissance/Valley that the KYTC was rejecting the completed roadway on the basis that: (1) the work was not timely completed; (2) the turning lane did not have the correct cross slope; and (3) there was a "[d]angerous edge drop off" between the edge of the roadway and a paved ditch. (DN 123-6, p. 2). Having found the roadwork unacceptable, the KYTC thereupon lodged a claim with Developers and sought its performance under the 2005 encroachment permit bond. Developers then contracted with Louisville Paving Company, Inc. to complete remediation work on the road in a manner acceptable to the KYTC, allegedly incurring substantial additional costs as a result.

### B. Procedural Background

Developers brought an action in this court, pursuant to diversity jurisdiction, against Renaissance/Valley and its related parties to enforce Developers' rights under the indemnity agreement dated September 4, 2004.[2] In response, Renaissance/Valley, Donald J. Cook, and DKCD, Inc. (collectively, the "Renaissance Parties") brought third-party claims against T&C seeking contractual and common law indemnity. (Am. Third Party Compl., DN 104). The Renaissance Parties allege that T&C breached the terms of its subcontract and negligently performed the construction work. (*Id.*). T&C thereafter brought third-party claims against

---

[2] Developers reached a settlement agreement with defendants Renaissance/Valley, DKCD, Inc., Cooper Farms, LLC, Donald J. Cook, and Deborah S. Cook on November 7, 2012. Pursuant to the terms of that settlement, the court entered an agreed judgment against those defendants in the amount of $285,000 plus interest. (DN 84). The court subsequently modified this agreed judgment to allocate the damages on the encroachment bond to $173,850.00, and $111,150.00 to an additional surety bond that is not at issue for the purposes of the pending motions. (DN 88). Thus, the only claims pending before the court are the related third-party claims asserted by the parties involved in the actual construction of the roadway.

Heritage,[3] the design engineer of the roadway, for indemnity, contribution, and apportionment as to the claims asserted against T&C by the Renaissance Parties. (Third Party Compl., DN 53).

The motions presently before the court address the third-party claims brought by the Renaissance Parties against T&C, as well as the third-party claims that T&C has made against Heritage. T&C has moved for summary judgment on all counts of the Renaissance Parties' Amended Third Party Complaint. (DN 119). Heritage has also moved for summary judgment on all counts of T&C's Third Party Complaint. (DN 121). Both T&C and Heritage contend they are entitled to summary judgment on the respective claims filed against them because the Renaissance Parties were responsible for the KYTC's rejection of the roadway and, in their view, should bear the costs attributable to their own omissions. They argue that the KYTC did not approve the roadway because it did not comport with engineering plans that were submitted with the encroachment permit. T&C and Heritage argue that the Renaissance Parties had an affirmative duty to submit the revised plans to the KYTC and should bear any loss deriving from this failure. The Renaissance Parties, in response, have filed a cross-motion for partial summary judgment on the breach of contract and indemnity counts contained in their Amended Third Party Complaint. (DN 123). These three motions are now before the court for our consideration.

## II.

A court may grant a motion for summary judgment if it finds that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record which demonstrates the absence of a genuine

---

[3] The Renaissance Parties filed a separate state court action against Heritage involving claims related to the Valley Station Road project. The Renaissance Parties and Heritage settled this separate suit pursuant to an agreed order entered by the Jefferson Circuit Court on September 30, 2010. (DN 121-2, p. 14–17). The Renaissance Parties have not asserted any claims against Heritage in the present action.

issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the nonmoving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986).

The evidence must be construed in a light most favorable to the party opposing the motion.  *Bohn Aluminum & Brass Corp. v. Storm King Corp*., 303 F.2d 425 (6th Cir. 1962).  However, the nonmoving party is required to do more than simply show there is some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits, to support its claims.  *Celotex*, 477 U.S. at 324.  It must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson*, 477 U.S. at 252.  The court, in ruling on cross-motions for summary judgment, "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Taft Broad. Co. v. U.S*., 929 F.2d 240, 248 (6th Cir. 1991) (citations omitted).

## III.

T&C has moved for summary judgment on all counts of the Renaissance Parties' Amended Third Party Complaint, which include: (1) breach of contract (Count I); (2) negligence

(Count II); (3) contractual indemnity (Count III); (4) common law indemnity[4]; and (5) specific performance (Count IV). (DN 119). The Renaissance Parties have filed a cross-motion for summary judgment as to their claims for breach of contract and indemnity. (DN 123). Heritage also seeks summary judgment on all counts of T&C's Third Party Complaint. (DN 121). Before addressing the merits of each motion, we will first outline the arguments raised by the parties as they are essential to understanding the nature of the claims and defenses relevant to this action.

## A. Position of T&C and Heritage

T&C and Heritage take similar positions in that they both argue that the Renaissance Parties' damages were caused by the Renaissance Parties' omissions and failures to act. According to T&C and Heritage, Heritage entered into a contract with the Renaissance Parties to develop engineering plans for the roadway construction project on Valley Station Road. Heritage's engineers created a set of plans that they submitted to the KYTC in conjunction with its review of the encroachment permit (the "original plans").

The Renaissance Parties thereafter approached T&C to provide an estimate of the construction costs associated with the Valley Station Road project. Donald Thornberry, the president of T&C, testified that before submitting an estimate, he asked the Renaissance Parties to commission additional engineering plans to include spot elevations that would specify the grade for the relevant portions of the roadway to be constructed and to account for the presence of a drainage ditch. (Thornberry Dep., DN 119-5, 30:10-25, 31:1-25, 32:1-25, 33:1-11). The Renaissance Parties agreed to make these changes and retained Heritage to revise the plans (the "revised plans"). Heritage submitted the revised plans with the spot elevations to the

---

[4] This claim is also denominated "Count III." Because it is incorrectly numbered, the court will refer to this count by name.

Renaissance Parties.  Apparently, however, the revised plans were not submitted to the KYTC for approval.  Thus, the only plans the KYTC had on file for the roadway were the original plans.

The Renaissance Parties then entered into a subcontract agreement with T&C in August 2005, pursuant to which T&C agreed to construct the roadway in accordance with the plans provided to it by the Renaissance Parties.  (DN 123-2, § 4).  Both T&C and Heritage contend that the Renaissance Parties supplied T&C with the revised, and not the original, plans.  After T&C completed its work on the roadway, a KYTC employee inspected the site and issued an Encroachment Inspection Notice on July 24, 2008.  In that notice, the KYTC listed several deficiencies with the construction and called in the bond with Developers.

T&C argues that the KYTC would have approved the roadway had the revised plans been submitted to the KYTC for its review.  It is their contention that either the Renaissance Parties, as the permittee of the encroachment permit, or Heritage, as the design engineer, were responsible for submitting all revisions of engineering plans to the KYTC for approval.  Such approval is necessary, they argue, because the KYTC inspectors evaluate a project based solely on its compliance with the plans that have been submitted with the encroachment permit.  They maintain that the KYTC only found deficiencies with the roadway because the KYTC had the original, rather than the revised, plans on file during its review.  In their view, the KYTC would have approved the roadway had its employees inspected it for compliance with the revised plans.  Thus, T&C and Heritage argue that the Renaissance Parties' failure to submit the revised plans to the KYTC (or ensure their submittal by Heritage) precludes any recovery on their part.

**B.  Position of the Renaissance Parties**

The Renaissance Parties take the position that T&C violated the subcontract agreement by constructing a roadway that the KYTC deemed "deficient."  They argue that T&C

contractually accepted to assume all risk of loss in the event that its work failed to comply with Kentucky statutes and codes regarding road construction. Because the Renaissance Parties maintain that T&C's work violated Kentucky statutes and administrative regulations dealing with road construction, they believe they are entitled to indemnity from T&C for any claims brought against them relating to the construction of the roadway. It is their position that T&C is precluded from excusing its alleged breach of the subcontract agreement and negligence by claiming that it relied on the engineering plans provided to it.[5]

## C. Cross-Motions for Summary Judgment on the Renaissance Parties' Amended Third Party Complaint

### 1. Count I: Breach of Contract

Both T&C and the Renaissance Parties seek summary judgment on the breach of contract claim asserted against T&C. Under Kentucky law, a claim for breach of contract requires proof of the following: (1) the existence of a contract; (2) breach of that contract; and (3) damages stemming from the breach. *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. 2009) (citation omitted). The parties agree that the Renaissance Parties have established the first element, as T&C entered into a subcontract agreement with the Renaissance Parties in August 2005, pursuant to which T&C agreed to perform construction work on the roadway. What is disputed, however, is whether T&C breached the terms of the subcontract.

The Renaissance Parties allege that T&C breached the subcontract by failing to perform the work required of it "in conformity with all relevant federal, state, territorial, and local codes and statutes." (DN 26, ¶ 30). Indeed, in Section 24 of the subcontract T&C agreed to comply with these aforementioned codes and statutes, as well as "indemnify [the Renaissance Parties]

---

[5] The Renaissance Parties dispute T&C's contention that it received the revised plans from the Renaissance Parties, as well T&C's assertion that it constructed the road in compliance with those revised plans.

against any and all claims or liens as a result of acts or omissions on part of [T&C] with respect to any noncompliance with such codes and statutes." (DN 123-2, § 24).

The only "codes and statutes" to which the Renaissance Parties cite in support of their breach of contract claim include one Kentucky statute, KRS § 177.106, and two Kentucky administrative regulations, 603 KAR 5:150 and 603 KAR 1:020. We first address the applicability of KRS § 177.106, which provides as follows:

> Before any person shall proceed to cause or continue or allow to remain in existence any encroachment under, on or over any part of the right-of-way of a state highway he shall first obtain from the Department of Highways a permit so to do. Any encroachment heretofore or hereafter placed or allowed to continue or remain under, on or over any road which is found by the Department of Highways to be interfering in any way with the safe, convenient and continuous use and maintenance of such road shall upon thirty (30) days [*sic*] notice to the person or to his chief agent by the Department of Highways be removed or relocated by such person at his own expense.

KRS § 177.106(1). The Renaissance Parties argue that T&C violated this statute when it constructed the roadway in a condition that the KYTC found to be interfering "with the safe, convenient and continuous use and maintenance" of Valley Station Road. KRS § 177.106(1). They direct the court to the KYTC's Encroachment Inspection Notice, which noted two deficiencies relevant to T&C's work on the project: (1) that the newly constructed turn lane did not have the "correct cross slope"; and (2) that there was a "dangerous edge drop off at [the] paved ditch." (DN 123-6). The Renaissance Parties contend that the findings contained in the KYTC's Notice conclusively establish T&C's violation of KRS § 177.106(1).

T&C, for its part, asserts that KRS § 177.106 provides the Department of Highways with the power to compel the removal of encroachments from a right-of-way. Thus under this reading, T&C cannot be said to be in violation of the statutory language because it did not fail to respond to a request to remove an offending encroachment from a roadway. We find T&C's

interpretation to be most in line with the statutory language. Kentucky courts have also interpreted this statute as governing "encroachments along state highways and requir[ing] anyone causing or maintaining such an encroachment to obtain a permit for it from the Department of Highways." *Estate of Claywell v. Grider*, 2003 WL 22462388, *1 (Ky. Ct. App. Oct. 31, 2003). Under this reading, T&C cannot be said to have violated the statute's terms as it is undisputed that the Renaissance Parties obtained a permit from the KYTC before T&C commenced construction on the roadway. Moreover, the Renaissance Parties have not pointed to any instance in which a court applied the statute to impose liability on a contractor engaged in road construction.

Thus, the court is hesitant to impose liability on T&C, a road contractor who apparently constructed a roadway in accordance with the engineering plans provided to it, albeit in a manner the state ultimately deemed deficient. Although the Renaissance Parties dispute T&C's assertion that it received the revised plans from the Renaissance Parties and constructed the roadway in accordance with those revised plans, the Renaissance Parties have not provided the court with any evidence to contradict the testimony of T&C and Heritage employees, all of whom attested that the construction work was done according to the revised plans. (Thornberry Dep., DN 119-5, 19:17-24, 33:8-11, 86:22-25, 87:1-10; Cavan Dep., DN 119-7, 16:7-25, 17:1-2, 49:8-25, 50:1-25; Sanders Dep., DN 119-11, 68:2-25, 70:2-9, 76:5-17). In sum, the Renaissance Parties have not raised a genuine factual dispute as to whether T&C failed to remove an encroachment from the road in violation of the statutory language. Thus, the Renaissance Parties may not look to KRS § 177.106(1) as a basis for their breach of contract claim.

The Renaissance Parties also rely on two Kentucky administrative regulations to support their breach of contract claim. The first, 603 KAR 5:150, states that it "incorporate[s] by

reference" the "Kentucky Transportation Cabinet Permits Manual." The KYTC Permits Manual, in turn, adopts various national roadway engineering standards, including the American Association of State Highway Transportation Officials' Policy on Geometric Design of Highways and Streets, referred to in the industry as the "Green Book." (DN 129-2, p. 4).

The Renaissance Parties argue that T&C violated this administrative regulation when it constructed the roadway in a manner that did not conform to the standards set forth in the KYTC Permits Manual and the Green Book. This argument misses the mark. The record reflects that Heritage, not T&C, designed the engineering plans, and that the Renaissance Parties instructed T&C to construct the roadway in accordance with those plans. The Renaissance Parties have not presented any evidence to the contrary.

Though the revised plans may have deviated from the standards established in the KYTC Permits Manual or Green Book, the Renaissance Parties have not raised a genuine factual dispute as to whether T&C was required to apply independent judgment or engineering principles in its construction of the road. Rather, the parties have presented testimony that road contractors like T&C are expected to follow the engineering plans provided to them. (Tucker Dep., DN 119-4, 152:6-8). Thus, T&C's duty was to construct the roadway according to the plans it received from the Renaissance Parties. *See City of Louisville v. Padgett*, 457 S.W.2d 485, 490 (Ky. 1970) (quoting *Wood v. Foster & Creighton Co.*, 235 S.W.2d 1 (Tenn. 1950)) ("The contractor's work is not the engineering job of laying out the project but is merely in doing what it is instructed to do. So long as it does this work as it is instructed to do by its superior in a workman like manner, not negligently, then the contractor is not liable."). T&C contends that it fulfilled this obligation, and the evidence in the record does not reflect otherwise. Any liability for noncompliance with the KYTC Permits Manual or the Green Book lies with Heritage, the design

engineer, or the Renaissance Parties, as the party who contracted with Heritage to design the plans. Accordingly, a claim premised on T&C's alleged violation of 603 KAR 5:150 must fail.

The second regulation to which the Renaissance Parties cite in support of their claim for breach of contract, 603 KAR 1:020, deals with the construction of driveway entrance approaches. 604 KAR 1:020, § 1(3)(b). It provides that such approaches "shall be constructed or installed as shown on the permit, documents and plans approved by the Department of Highways." *Id.* This regulation would seem to apply here, as T&C admits that it did not construct the roadway in accordance with the original plans that were submitted to and approved by the KYTC.

T&C, however, has introduced evidence which establishes that it was not at fault for this alleged violation of the regulation. It points to testimony from Robert Rogers, the KYTC employee who reviewed the project and submitted the Encroachment Inspection Notice, that the KYTC rejected the roadway because it did not correspond to the specifications contained in the original plans on file with the KYTC. (Rogers Dep., DN 129-5, 94:22-25, 95:1-5, 96:2-7, 102:1-19, 106:6-13). Testimony from other KYTC employees supports Rogers' assertion that roadway projects are evaluated for their compliance with the engineering plans on file with the KYTC and that the KYTC, in its review, does not conduct an independent evaluation of the roadway's compliance with engineering standards. (Tucker Dep., DN 119-4, 157:2-13).

The record, however, reflects that the only plans that the KYTC had on file for the project were the original plans. (Tucker Dep., DN 119-4, 11:20-24). The KYTC employees involved with evaluating the roadway construction testified that they did not recall ever seeing the revised plans, and the revised plans could not be located in any of the KYTC's files. The court can infer from the absence of the records—as well as the Renaissance Parties' failure to present any

contradictory evidence—that the revised plans were not submitted to the KYTC.[6]  For the purposes of this motion, however, it matters not whether the Renaissance Parties or Heritage were responsible for submitting the revised plans, as testimony from KYTC officials and employees makes clear that contractors like T&C are not responsible for submitting engineering plans for the KYTC's approval.  (Albright Dep., DN 129-3, 19:2-7, 20:6-10, 23:24-25, 24:1-10; Rogers Dep., DN 129-5, 34:4-7; Tucker Dep., DN 119-4, 89:13-25, 90:1-16, 91:8-12).  Rather, such responsibility generally lies with the permittee, which in this instance was the Renaissance Parties, or, in some cases, the engineer, which in this case was Heritage.  (*Id.*).

Moreover, Section 4 of the subcontract required T&C to complete the roadwork in accordance with the plans and specifications provided by the Renaissance Parties.  T&C claims it complied with the Renaissance Parties' instructions and constructed the road in accordance with the specifications contained in the revised plans.  The Renaissance Parties have not presented evidence to contradict this assertion, nor have they raised a factual issue as to whether the work T&C performed was substandard or technically unsound.  Although the KYTC deemed the roadwork "deficient," the KYTC employee who issued the Encroachment Inspection Notice testified that roadwork is considered "deficient" if it does not precisely comply with the plans on file with the KYTC.  (Rogers Dep., DN 129-5, 93:15-20, 96:2-25, 97:1-11).  Thus, the KYTC defines a "deficiency" in terms of noncompliance with the construction plans filed with its office, rather than the failure to conform to engineering standards and practices.  As such, the deficiency in the instant action is more appropriately attributed to the Renaissance Parties for failing to submit, or in not instructing Heritage to submit, the revised plans to the KYTC.

---

[6]  Steven Tucker, the KYTC employee who completed the paperwork for the Renaissance Parties' encroachment permit, testified that it is the KYTC's practice to retain only the most current version of plans in its files and dispose of prior versions.  (Tucker Dep., DN 119-4, 19:16-25, 20:1-4).  Tucker further testified that the only plans in the KYTC file relating to the Valley Station Road project were the original plans.  (*Id.* at 11:20-24).

Accordingly, even after construing the facts in a light most favorable to the Renaissance Parties, we find that T&C cannot be said to have violated the provisions of 603 KAR 1:020. The Renaissance Parties have not provided the court with evidence of T&C's breach of the subcontract. As such, T&C is entitled to summary judgment on the breach of contract claim.

### 2. Count II: Negligence

Under Kentucky law, a negligence action requires proof of the following: "(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992) (citing *Ill. Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967)). The Renaissance Parties allege that T&C "had a duty to perform its services under the subcontract in accordance with the standard of care ordinarily exercised by a construction contractor performing similar services under similar circumstances." (DN 26, ¶ 33). As with their breach of contract claim, the Renaissance Parties argue that T&C breached this duty by failing "to perform work that complied with applicable laws, regulations, and codes." (*Id.* ¶ 34).

The arguments that the Renaissance Parties raise in support of their negligence claim essentially mirror those of their breach of contract claim. Distilled to their basic points, they are that T&C failed to comply with the requirements of KRS § 177.106 and 603 KAR 5:150 and 1:020. The Renaissance Parties assert that the violation of these statutes constitute negligence *per se*. However, we previously determined that T&C did not breach or otherwise violate the aforementioned statutes and regulations. To the extent that we have already considered and rejected those arguments with respect to T&C, we need not address them again here.

Moreover, T&C has presented evidence that the KYTC rejected the roadway for the sole reason that it did not comply with the original plans that the KYTC had on file for the Valley

Station Road project. T&C directs the court to the testimony of the KYTC employee who issued the Encroachment Inspection Notice. As has been previously noted, this employee testified that the KYTC rejected the work not because it violated Kentucky codes or statutes dealing with road construction, but rather because it did not conform to the engineering plans submitted to the KYTC. The Renaissance Parties have not submitted evidence or testimony to otherwise contradict this testimony, nor have they provided the court with evidence tending to show that the KYTC rejected the roadway because it was constructed in violation of state codes or statutes. In sum, the Renaissance Parties have not shown that T&C breached the standard of care in its performance of the subcontract. Thus, T&C is entitled to summary judgment on this claim.

### 3. Counts III and IV: Indemnity and Specific Performance

The Renaissance Parties allege that they are entitled to both contractual and common law indemnity from T&C, and they request that T&C be ordered to specifically perform its indemnification obligation by indemnifying them in accordance with the terms of the subcontract. They cite to Section 24 of the subcontract as the source of their claim for contractual indemnity. Pursuant to that provision, T&C agreed to indemnify the Renaissance Parties "against any and all claims or liens as a result of acts or omissions on part of [T&C] with respect to any noncompliance with [federal, state, territorial, and local] codes and statutes." (DN 123-2, § 24).

The Renaissance Parties allege that they are entitled to indemnity under this provision because T&C failed to perform the construction work in compliance with the relevant state codes and statutes. (DN 26, ¶¶ 39–41). The Renaissance Parties further allege that they are entitled to common law indemnity because T&C "negligently failed to perform work in compliance with codes and statutes." (*Id.* ¶ 43).

We have determined, however, that T&C was not negligent in its performance of the construction work under the subcontract and did not violate any of the statutes or code sections cited by the Renaissance Parties. Thus, the Renaissance Parties' claims for contractual and common law indemnity fail as a matter of law to the extent that they are premised on T&C's negligent performance of the subcontract, as "[t]here can be no indemnity without liability." *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 253 (Ky. 1995) (citations omitted), *overruled on other grounds by Martin v. Ohio Cnty. Hosp. Corp.*, 295 S.W.3d 104 (Ky. 2009)). Accordingly, T&C is entitled to summary judgment on these claims.

### D. Heritage's Motion for Summary Judgment on the Third Party Complaint of T&C

T&C brought a third party complaint against Heritage for the purpose of preserving an apportionment instruction against Heritage as a settling party. Heritage has moved for summary judgment as to all counts of that third party complaint. (DN 121). However, Heritage's motion is now moot, the court having found that T&C is entitled to judgment on all the claims made against it by the Renaissance Parties.

### IV.

For the reasons set forth herein this date and the court being otherwise sufficiently advised, it is hereby ordered that T&C's motion for summary judgment (DN 119) is granted as to all counts of the Amended Third Party Complaint (DN 104), and the Renaissance Parties' cross-motion for partial summary judgment (DN 123) is denied. Heritage's motion for summary judgment as to all counts of T&C's Third Party Complaint (DNs 53, 121) is denied as moot. A separate order and judgment will be entered this date in accordance with this Memorandum Opinion.

July 2, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**